RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0015p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KYLE CIMINILLO,

*Plaintiff-Appellant,*

v.

THOMAS STREICHER; DANIEL HILLS; RICHARD JANKE,
*Defendants,*

GERALD KNIGHT; CITY OF CINCINNATI,
*Defendants-Appellees.*

No. 04-4346

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00193—Herman J. Weber, District Judge.

Submitted: December 7, 2005

Decided and Filed: January 17, 2006

Before: MARTIN, COLE, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Kenneth L. Lawson, LAWSON & ASSOCIATES, Cincinnati, Ohio, for Appellant. Richard Ganulin, CITY SOLICITOR'S OFFICE, Cincinnati, Ohio, for Appellees.

---

**OPINION**

---

R. GUY COLE, JR., Circuit Judge. Plaintiff-Appellant Kyle Ciminillo filed a lawsuit pursuant to 42 U.S.C. § 1983, after he was allegedly shot in the face with a beanbag propellant during the course of a riot. The district court granted summary judgment to Defendant-Appellee Gerald Knight on Ciminillo's excessive-force claim, and to Defendant-Appellee City of Cincinnati on Ciminillo's failure-to-train claim. Ciminillo appeals that decision. For the following reasons, we REVERSE the district court's order granting summary judgment to Officer Knight and REMAND for further proceedings. We AFFIRM the district court's order granting summary judgment to the City of Cincinnati.

**I.**

On May 4, 2002, Ciminillo was at home playing video games when his roommates told him about a nearby street party on Stratford Avenue in Cincinnati, Ohio. They went to the area of the party and, within

1

minutes, the crowd began moving up the street. Ciminillo saw a friend standing on a porch, and spent several minutes talking with him. Meanwhile, members of the crowd had become rowdy; some had set fires in the street and were throwing bottles at police officers and civilians. Fifteen police officers in riot gear walked down Stratford Avenue to clear the crowd. The officers ordered the crowd to disperse via megaphones. As Ciminillo attempted to leave his friend's house, he saw officers fire approximately six beanbag shots at the crowd around him. Ciminillo tried to leave through his friend's backyard, but a property owner with a bat refused to allow him onto the adjacent property. Ciminillo could see a kneeling police officer firing beanbag propellants randomly at the crowd, could hear the "beans" falling on the concrete, and saw a beanbag explode approximately two feet above a girl's head. During a pause in the shots, Ciminillo alleges that he slowly walked towards the officers with his hands above his head. After advancing about ten feet, Officer Gerald Knight shot him, allegedly without provocation and at point blank range, in the chin and chest with a beanbag propellant. Upon being shot, Ciminillo alleges that he grabbed a walkway pole and lay on the ground. As he lay there, officers approached Ciminillo and told him to stay down. Once he did get up, Ciminillo alleges that he was ordered by another officer to go to the end of the street to report to an officer there. As a result of the shooting, Ciminillo needed twenty stitches in his chin. He also incurred a bruised lung and a permanent facial scar.

Although their account of the riot on Stratford Avenue is substantially similar to Ciminillo's, the defendants' account of the shooting itself differs. According to the defendants, Ciminillo was shot while in the act of throwing an unknown object in the direction of the police. Furthermore, the defendants allege that after being struck by the beanbag, Ciminillo was told to report to officers at the end of the street only for the purpose of having his injury examined.

Pursuant to 42 U.S.C. § 1983, Ciminillo filed a lawsuit in district court, alleging violations of his Fourth and Fourteenth Amendment rights, as well as state law claims of assault, battery, and intentional infliction of emotional distress. The district court dismissed with prejudice the federal claims alleged against several defendants; those claims are not before us. After converting the defendants' motion to dismiss into a motion for summary judgment, the district court granted the defendants summary judgment as to Ciminillo's claims for excessive-force and failure-to-train as alleged against Officer Knight and the City of Cincinnati. Having dismissed all of Ciminillo's federal claims, the district court then declined to exercise supplemental jurisdiction over the state claims pending against Knight. This appeal follows.

## II.

We review a district court's grant of summary judgment *de novo*. *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005). In conducting that review, we must assume the truth of the non-moving party's evidence and construe all inferences from that evidence in the light most favorable to the non-moving party. *Id.* A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party. A "mere scintilla" of evidence will not be enough for Ciminillo, the non-moving party, to withstand summary judgment. *Skousen v. Brighton High School*, 305 F.3d 520, 526 (6th Cir. 2002). Furthermore, Ciminillo may not rest on his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

A. Excessive-force Claim

In granting Knight's motion for summary judgment, the district court analyzed Ciminillo's excessive-force claim under the Fourteenth Amendment, as opposed to the Fourth Amendment, because it found that the incident giving rise to the lawsuit did not involve a search or seizure. The district court held that Knight was entitled to qualified immunity because the record did not establish that Knight's conduct violated Ciminillo's Fourteenth Amendment rights.

Ciminillo argues that the district court erred in analyzing his excessive-force claim under the Fourteenth Amendment. Under the Fourth Amendment, Knight would be liable for his conduct if it were

unreasonable. "[T]he Fourth Amendment protects against only unreasonable seizures, it is not a guarantee against unreasonable or outrageous official conduct generally." *Ewolski v. City of Brunswick*, 287 F.3d 492, 505 (6th Cir. 2002). Under the Fourteenth Amendment, however, Ciminillo must establish that Knight's conduct "shocked the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Graham v. Connor*, 490 U.S. 386, 393 (1989).

It is established law that if the incident out of which litigation arises is neither a search nor a seizure, an excessive-force claim will not be analyzed under the Fourth Amendment. In *Graham*, the Supreme Court held that all claims that police officers used excessive-force in the course of an arrest, investigatory stop, or other seizure should be analyzed under the rubric of the Fourth Amendment as opposed to the Fourteenth Amendment. *Id.*, 490 U.S. at 395. Yet the Court has subsequently recognized that the *Graham* rule only applies when a constitutional claim is covered by a specific amendment. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Alleged conduct that does not implicate a constitutional right protected by another amendment will be analyzed under the substantive due process component of the Fourteenth Amendment. *Id.* Thus, in determining whether to apply the Fourth or the Fourteenth Amendment to Ciminillo's excessive-force claim, the proper inquiry is whether Ciminillo was seized. *County of Sacramento v. Lewis*, 523 U.S. 833, 842-43 (1998).

In *Brower v. County of Inyo*, the Supreme Court held that:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

489 U.S. 593, 596-97 (1989) (emphasis in original). In both *Brower* and *Lewis*, a police officer accidentally struck and killed a fleeing motorist during a high-speed chase. In both cases, the Supreme Court held that there was no seizure, because in each case the police sought to stop the suspect only by flashing lights and continued pursuit, and had not intended to stop the car by way of the accident. *Id.* at 597. The Court concluded in *Brower* that had the police cruiser pulled alongside the fleeing car and sideswiped it, the resulting crash would have been a seizure. *Id.*

Following *Lewis*, we have declined to analyze a claim under the Fourth Amendment when the plaintiff is accidentally injured during the seizure of a third party. In *Claybrook v. Birchwell*, this Court utilized the Fourteenth Amendment to analyze the claim of a plaintiff who was shot by the police during the police's attempt to apprehend a third person:

> [T]he Fourth Amendment 'reasonableness' standard does not apply to section 1983 claims which seek remuneration for physical injuries *inadvertently inflicted upon an innocent third party* by police officers' use of force while attempting to seize a perpetrator, because the authorities could not 'seize' any person other than one who was a deliberate object of their exertion of force.

199 F.3d 350, 359 (6th Cir. 2000) (emphasis in original) (citing *Brower*, 489 U.S. at 596). *See also Ewolski*, 287 F.3d at 507 (wife and son were not seized when police gained control of their home in order to restrain the movement of a third party).

Unlike the plaintiffs in *Claybrook* and *Ewolski*, Ciminillo was not collaterally injured by an assertion of force against a third party; he was the direct target of police conduct. In holding that the Fourth Amendment does not apply here, the district court reasoned that Knight's use of force was not accompanied by an effort to restrain or apprehend Ciminillo, and thus did not constitute a seizure under the Fourth Amendment. Whether Knight shot Ciminllo in an effort to restrain his movement, however, is a disputed question of fact. Assuming those facts supported by the record that are most favorable to Ciminillo to be

true, and drawing all inferences in his favor, there was in fact a seizure. Ciminillo alleges that he was shot after attempting to leave the scene of the riot. He alleges that he was shot as he approached Knight with his hands raised in the air. Furthermore, after Ciminillo was shot, the officers told him to lie on the ground. After being shot, Ciminillo stated: "I lay there in shock for a second, and then I just kept trying to get up and was actually in pushup position looking at a cop, you know, because he kept screaming at me to stay down, stay down, stay down." Once he did get up, Ciminillo was ordered by an officer to go to the end of the street and report to another officer. That Ciminillo was not eventually placed in handcuffs or taken to the police station does not preclude a determination that he was seized. *Terry v. Ohio*, 392 U.S. 1, 16 (1967) ("It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime—'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.").

The type of force used also militates in favor of a Fourth Amendment analysis, at least at this stage of litigation. In *Fisher v. City of Memphis*, 234 F.3d 312, 318 (6th Cir. 2000), we emphasized that police officers seize those persons who are the "deliberate object of their exertion of force." *Id.* at 318 (quoting *Claybrook v. Birchwell*, 199 F.3d at 359). Like the officer in *Fisher*, who shot at a car in an attempt to stop it from moving, it is reasonable to infer from the record that in shooting Ciminillo, Knight intended to stop Ciminillo from coming any closer. Furthermore, we have previously held that apprehending an individual by way of shooting constitutes a seizure. "There is no question that [the plaintiff] was seized when [the officer] shot him in the bedroom." *Sargent v. City of Toledo Police Dept.*, No. 04-4143, 2005 WL 2470830, at *3 (6th Cir. Oct. 6, 2005). In *Deorle v. Rutherford*, the Ninth Circuit considered an excessive-force claim brought by a plaintiff who was shot by an officer under the reasonableness standard required by the Fourth Amendment. 272 F.3d 1272, 1279-80 (9th Cir. 2001). Like Ciminillo, the plaintiff was shot with a beanbag while approaching the officer in a non-threatening manner. *Id.* at 1275.

Given that we must take those facts in the record most favorable to the non-moving party as true, Ciminillo's excessive-force claim is properly analyzed under the rubric of the Fourth Amendment.

B. Qualified Immunity

In evaluating the merits of a qualified immunity defense, we must engage in a two-step analysis: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and if so, (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Myers*, 422 F.3d at 352. When the defense of qualified immunity is raised, it is the plaintiff's burden to prove that the state officials are not entitled to qualified immunity. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

Whether Knight seized Ciminillo in violation of his Fourth Amendment rights depends on whether Knight's conduct was objectively reasonable, which this Court determines by balancing the nature and quality of the intrusion on Ciminillo's Fourth Amendment interests against the countervailing governmental interests at stake. *See Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). Whether a seizure is reasonable depends on the totality of the circumstances, including 1) the severity of the crime, 2) whether the suspect poses an immediate threat to the safety of the officers or others, and 3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

The *Graham* factors do not constitute an exhaustive list; the ultimate question is "whether the totality of the circumstances justifies a particular sort of seizure." *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Graham*, 490 U.S. at 396). Furthermore, reasonableness must be judged from the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight. *See Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). "This standard contains a built-in measure of deference to the officer's

on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

Taking Ciminillo's version of events to be correct, as we must, Ciminillo's seizure was not reasonable. Each of the *Graham* factors militates against a finding that his seizure was reasonable as a matter of law. First, Ciminillo alleges that he was not engaged in a crime when Officer Knight shot him with the beanbag. Other courts have found that the fact that a plaintiff in a § 1983 suit had committed no crime clearly weighed against a finding of reasonableness. *See, e.g., Bailey v. Kennedy*, 349 F.3d 731, 743-44 (4th Cir. 2003). In *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001), this Court held that officers acted unreasonably in placing handcuffs that were too tight on the wrists of a plaintiff who had been stopped for making an illegal left-hand turn. Here, the force used against Ciminillo was certainly greater than that used against the plaintiff in *Kostrzewa*; shooting a suspect, even with a beanbag propellant, is a greater exertion of force than the use of tight handcuffs. Furthermore, in *Kostrzewa*, the plaintiff committed a crime, albeit a minor one. Here, we must assume that Ciminillo committed no crime.

Second, Ciminillo's conduct did not suggest that he posed an immediate threat to the safety of the officers. Ciminillo alleges that he slowly approached Officer Knight, with his hands in the "surrender" position. Ciminillo's conduct demonstrated that he was not armed, and thus posed no threat to the officers' safety. Other courts have found the use of deadly force to be objectively unreasonable against a visibly armed plaintiff who had his hands over his head in the "surrender position." *See Robinson v. Nolte*, No. 02-55094, 77 Fed. Appx. 413, 414 (9th Cir. 2003).

Finally, there is no evidence to suggest that Ciminillo was attempting to resist or evade arrest by flight. Instead, according to Ciminillo, his actions were an attempt to leave the scene of the riot, peacefully. Taking Ciminillo's account to be true, he was cooperating with police, and thus Knight's conduct cannot be said to be reasonable.

Although the factors articulated in *Graham* each militate against a finding that Knight's conduct was reasonable, we must consider the totality of the circumstances. It is undisputed that Knight shot Ciminillo during the course of a riot. However, the fact that the shooting took place during a riot does not automatically render Knight's conduct reasonable. *See Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125, 1131 (9th Cir. 2002) (officers not entitled to qualified immunity for spraying protesters with pepper spray during the course of a riot); *Otero v. Wood*, 316 F. Supp. 2d 612, 622 (S.D. Ohio 2005) (denying summary judgment to defendant officer who shot plaintiff in the face with a small wooden disk during a riot). Taking the facts in the light most favorable to Ciminillo, it was objectively unreasonable for Knight to shoot Ciminillo as he attempted to leave the scene of the riot. The use of less-than-deadly force in the context of a riot against an individual displaying no aggression is not reasonable. *Otero*, 316 F. Supp. 2d at 622.

The facts, as alleged, are readily distinguishable from those analyzed in *Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001). In *Darrah*, a police officer was attacked by a protester while he was arresting a third party. The police officer first removed the protester, who had attached herself to his ankles. *Id*. at 307. Only after the protester lunged for his ankles a second time did the police officer strike her. *Id.* We held that, assuming the protester was seized under the Fourth Amendment, the officer's conduct was reasonable. *Id.* at 307-08. In *Darrah*, the protester posed an immediate risk to the safety of the officer, making his limited use of force reasonable. By comparison, Ciminillo posed no risk, was engaged in no crime, and was not attempting to evade the police.

Even though Ciminillo alleges facts that, if true, would constitute a violation of his Fourth Amendment rights, Knight may still be entitled to qualified immunity unless those rights were "clearly established" at the time of the shooting. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Myers*, 422 F.3d at 356 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "This is not to say that an official action is

protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640 (internal citation omitted). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). To determine whether a right is "clearly established," we must first look to decisions of the Supreme Court, then to decisions of this Court and courts within this Circuit, and last to decisions of other circuits. *McBride v. Village of Michiana*, 100 F.3d 457, 460 (6th Cir. 1996).

Thus, we must determine whether it would have been clear to a reasonable officer in Knight's position that shooting Ciminillo with a beanbag propellant was unreasonable. It was clearly established law in this Circuit at the time of the underlying events that individuals have a right not to be shot unless they are perceived as posing a threat to officers or others. *Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir. 1991); *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988). Although Knight did not use deadly force in shooting Ciminillo, that fact cannot insulate him from liability. At the time of the underlying events, this Court had previously held that the use of less-than-deadly force, including pepper spray, may be excessive. In *Adams v. Metiva*, 31 F.3d 375, 385-86 (6th Cir. 1994), this Court held that summary judgment was inappropriate for an excessive-force claim brought against police officers who allegedly sprayed the plaintiff with pepper spray, when it remained disputed whether the plaintiff had committed a crime, whether he posed a threat, and whether he was resisting arrest. *See also Vaughn v. City of Lebanon*, 18 Fed. Appx. 252, 266-68 (6th Cir. 2001) (summary judgment is inappropriate for excessive-force claim based on officers' conduct in spraying an arrestee in the face with pepper spray, when whether arrestee was resisting arrest remains a genuine issue of fact). Thus, in this Circuit, it was clearly established that individuals had a general right to be free from the unreasonable use of non-lethal force.

Furthermore, Knight was on notice that it is unreasonable to use beanbag propellants against individuals who pose no immediate risk to officer safety. In *Deorle*, the Ninth Circuit held that the use of beanbag propellants against an unarmed man who posed no immediate threat was not objectively reasonable. There, a suicidal plaintiff was observed with a hatchet and a crossbow. *Id.*, 272 F.3d at 1276-77. He discarded both objects as ordered by the officers, and then slowly approached an officer while carrying a bottle or can in his hand. *Id.* at 1277. The officer fired a beanbag propellant at him without warning. *Id.* The Ninth Circuit held that even though the plaintiff approached the officer while armed, it was unreasonable to shoot him with a beanbag. *Id.* at 1281-82.

Given *Yates, Adams*, and *Deorle*, it was clearly established that shooting Ciminillo with a beanbag was objectively unreasonable. Thus, Knight is not entitled to qualified immunity.

C. Failure to Train

The district court held that the City of Cincinnati was entitled to summary judgment because nothing in the record supported Ciminillo's allegations that Knight was improperly trained on the use of beanbag propellants. In order to establish a failure-to-train claim, Ciminillo must establish that: 1) the City's training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the City's deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992). The Supreme Court has held that a municipality can be liable for a failure to train only when that failure reflects "a 'deliberate' or 'conscious' choice." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

In arguing that the City of Cincinnati violated his constitutional rights by failing to train its officers in the use of beanbag propellants, Ciminillo points to an agreement entered into between the City of Cincinnati, the Cincinnati Police Department, and the United States Department of Justice regarding, among other things, the use of beanbag propellants. That agreement was entered into less than one month before the events that underlie this action. Furthermore, Ciminillo points to Knight's affidavit, in which Knight states:

> I was trained in use of the bean bag shotgun in the Police Academy consecutively every year at the Police firing range. Part of training is review of Department Policy and Procedure about when you can and can't deploy bean bag shotguns, distances that are safe to deploy the weapon at a subject, and appropriate areas of the body to aim for.

Although Ciminillo argues that a jury could infer from that agreement and Knight's affidavit that the City had not completed the training of its officers, nothing in the record supports such an inference. To the contrary, both the agreement itself and Knight's affidavit suggest that the City was affirmatively taking steps to train officers in the use of beanbag propellants. Furthermore, Ciminillo has submitted no additional evidence regarding the number of incidents of beanbag misuse, delays in the implementation of the Department of Justice agreement, or any other evidence that suggests that the City's training of officers in the use of beanbags is, or ever was, constitutionally defective.

Although we must make all inferences in Ciminillo's favor, Ciminillo "must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Ciminillo has not submitted any facts from which this Court could infer that the City of Cincinnati has failed to train its officers in the use of beanbags.[1]

### III.

For the foregoing reasons, we REVERSE the district court's order granting Knight summary judgment, and REMAND for further proceedings consistent with this opinion. We AFFIRM the district court's order granting the City of Cincinnati summary judgment on Ciminillo's failure-to-train claim.

---

[1] Ciminillo argues on appeal that the City of Cincinnati is liable for Knight's conduct because it ratified that conduct by failing to conduct a thorough investigation. Ciminillo did not raise this argument before the district court, and as such, this Court cannot consider it.