GRIFFIN, Circuit Judge.
Plaintiff Gary Franks brought this action against his former employer, defendant Village of Bolivar, Ohio, and its May- or, defendant Rebecca Hubble, following his termination as the Village’s Street and Water Supervisor. The district court granted summary judgment in favor of defendants on all of plaintiffs claims. Franks appeals only the district court’s ruling regarding his Ohio age discrimination claim. For the reasons set forth, we affirm.
I.
In 1977, Franks was appointed as the Street and Water Supervisor for the Village of Bolivar. At the time of his termination in 2011, Franks was the oldest employee of the village.
Rebecca Hubble became the Mayor of Bolivar in February 2010. The parties agree that before Hubble’s assumption of office, Franks had never been disciplined. However, after Hubble took office, she and Franks clashed, and Franks was disciplined several times.
The first incident resulting in discipline arose from Franks permitting his fourteen-year-old grandson to use a village-owned lawn mower. Mayor Hubble asked Franks why his grandson was operating the mower. Franks told Hubble that his grandson was “helping us mow” and that he — Franks—was paying his grandson with his personal funds. Hubble was concerned that this arrangement was not legal, and, after speaking with the village’s attorney, directed Franks to stop permitting his grandson to use the mower. According to Mayor Hubble, after she gave Franks this instruction, he said “I’m going to pretend like I didn’t hear that.” Franks denies making this statement. Hubble told Franks that if his grandson continued to operate the mower, Franks would be given a disciplinary warning. Subsequently, Mayor Hubble was informed that a village resident had called the village offices saying that she had seen Franks’ grandson on the mower again. Thereafter, Mayor Hubble gave Franks a verbal warning.
The second incident involved an altercation between Franks and village resident Frank Lunsford. On June 21, 2010, Hubble met Lunsford in her office with the village police chief, Randall Haugh. Towards the end of the meeting, Lunsford commented to the Mayor that he had seen *536 Franks sitting in his truck, not working, for “several hours” at a time; Lunsford opined that Franks was not performing his duties during working hours. Franks overheard Lunsford’s comments,' entered Hubble’s office, and accused Lunsford of lying. Hubble says that Franks pointed at Lunsford while accusing him of lying. According to Haugh, Franks was “spitting mad” and red in the face while “screaming” at Lunsford. Franks’ son, who also overheard the incident, allegedly said that his dad was “a little bit loud.” Franks, however, testified that, although he called Lunsford a liar, he did so politely. Franks admits that the day after the Lunsford incident, Hubble came to his office and “handed me a reprimand for insubordination.” The written reprimand states “[t]his verbal warning is given to Gary E. Franks because of actions on June 21, 2010 while talking with Mr. Frank Lundsford [sic].”
The third incident was a confrontation between Franks and a school bus driver on August 31, 2010. The bus driver had attended a village finance committee meeting to discuss low-hanging branches that blocked his view of the roads while driving. After the meeting, Franks approached the bus driver and asked him which trees needed trimming. A witness who observed the incident thought that Franks “had a rather nasty voice when he confronted” the bus driver. The incident was captured on a police cruiser dasheam. Hubble issued Franks a written warning as a result of this altercation. The written warning states that it was issued “because of actions taken ... at the intermediate school bus area and per council request.” The basis for the warning was “insubordination, including but not limited to, refusal or failure to perform work assignment and the use of profane or abusive language to supervisors, employees or officers of the village, and absence from duty without notice or permission of the supervisor.”
The fourth incident concerned Franks’ actions at a finance committee meeting at which members of the council discussed whether to implement a time clock. According to Hubble, Franks became “very, very upset.” Council member Maria App similarly testified that Franks became “very agitated that he would have to resort to a time clock.” However, Franks testified that he was simply asking questions about who would clock him out if he was unable to use the time clock. Franks admitted at his deposition that he “might have been animated” during this meeting, and that the committee members “probably” thought he was angry. Mayor Hubble issued Franks another written warning — this one regarding his conduct at the finance committee meeting, at the behest of the council.
In December 2010, Mayor Hubble held a special council meeting to discuss retirement options for Franks. According to Councilmember App, the council’s “whole goal” at the meeting “was to either ... bring things into compliance ... or, if that didn’t happen, give him an option, either retire [or] resign.” Hubble testified that “it didn’t matter to me whether he retired or not.” Franks testified that Hubble strongly encouraged him to retire on multiple occasions. Specifically, Franks stated that Hubble “offered [Franks] a big party if [Franks] would retire.” Additionally, Franks testified that Hubble said that Franks “could go work on the farm” if he retired. Further, Hubble told Franks “she had big projects that she wanted to accomplish and she didn’t think [Franks] could do those.” On February 11, 2011, the council voted to offer Franks a retirement package. Apparently, Franks did not take the package because on February 21, 2011, the council voted to terminate *537 Franks. According to Council member App, the council decided to fire Franks because “he had an attitude, and [because of] insubordination” towards Hubble.
On March 9, 2011, Franks filed the instant action in Ohio state court, alleging five claims. Thereafter, defendants removed the case to the district court and filed a motion for summary judgment, which was granted by the district court. Franks now appeals; the only issue Franks raises on appeal is his state law age discrimination claim.
II.
We review de novo a district court’s summary judgment determination. Med. Mut. of Ohio v. K. Amalia, Enters. Inc., 548 F.3d 383, 389 (6th Cir.2008). Summary judgment is appropriate if, taking the evidence in the light most favorable to the non-moving party, the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is “no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a). “A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party.” Ciminillo v. Streicher, 434 F.3d 461, 464 (6th Cir.2006). A “mere scintilla” of evidence, however, is not enough for the non-moving party to withstand summary judgment. Id.
III.
Ohio Revised Code § 4112.02(A) makes it an unlawful discriminatory practice
[f]or any employer, because of the ... age ... of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
In turn, Ohio Revised Code § 4112.14(A) provides that
[n]o employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.
The Ohio Supreme Court has held that
absent direct evidence, to establish a prima facie [case of age discrimination] a plaintiff must demonstrate (1) that he or she was a member of the statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class.
Coryell v. Bank One Trust Co., 101 Ohio St.3d 175, 803 N.E.2d 781, 784-85 (2004) (citation and quotation marks omitted). “If a plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to provide some legitimate, nondiscriminatory reason for the action taken.” Peters v. Rock-Tenn Co., 180 Ohio App.3d 10, 903 N.E.2d 1256, 1260 (2008) (citation omitted). The employer’s burden at this stage is “one of production, not persuasion.” Ohio Univ. v. Ohio Civil Rights Comm’n, 175 Ohio App.3d 414, 887 N.E.2d 403, 424 (2008) (citation omitted). “If the employer submits admissible evidence that taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action, then the employer has met its burden of production.” Id. at 423 (citation and quotation marks omitted). “If the employer establishes a nondiscrimi *538 natory reason, the employee then bears the burden of showing that the employer’s proffered reason was a pretext for impermissible discrimination.” Peters, 903 N.E.2d at 1260 (citation omitted). “To show pretext, the employee must prove that the employer’s reason was false and that discrimination was the real reason for the discharge.” Ohio Univ., 887 N.E.2d at 424 (citation omitted, emphasis added).
When applying the above framework, courts must be mindful that “[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.” Id. (citation omitted). That is because “[t] he ultimate inquiry in an age-discrimination case is whether an employee was discharged on account of age.” Id. at 422 (citation omitted).
Here, the parties agree that Franks established a prima facie case of age discrimination. The parties disagree regarding whether the stated reasons for Franks’ termination were legitimate, nondiscriminatory reasons for termination, or merely a pretext for discrimination.
Defendants satisfied their burden of producing evidence that Franks was terminated for nondiscriminatory reasons. Defendants cite multiple instances in which Franks behaved inappropriately and unprofessionally. First, Franks permitted his fourteen-year-old grandson to mow grass with the village’s lawnmower and was disciplined for it. Although Franks disputes saying to Hubble “I’m going to pretend like I didn’t hear that,” he does not dispute that the incident occurred and he was admonished. Nor does he dispute that even after Mayor Hubble directed him to stop letting his grandson use the mower, a witness reported seeing Franks’ grandson using it again.
Second, Franks called village resident Frank Lunsford a liar in front of Hubble. This incident occurred after Franks entered Hubble’s office without being invited, thereby interrupting a meeting involving Hubble and Lunsford. The parties disagree over the tone with which Franks called Lunsford a liar. Nonetheless, Franks does not deny that he called Luns-ford a liar, nor does he deny entering Hubble’s office without permission.
Third, Franks confronted a village bus driver who had complained about his work. For this altercation, Franks was disciplined again by Hubble. Franks notes that the bus driver was not a village employee, and that he was written up for the incident under a rule governing insubordination arising from dealings with village employees. However, Franks does not deny that the confrontation occurred.
Finally, Franks became upset, or, in his words, “animated” at a finance committee meeting over Mayor Hubble’s plan to institute a time clock. He admits that the attendees of the meeting probably thought he was angry.
In summary, the undisputed evidence shows that Franks was repeatedly insubordinate and unprofessional with Mayor Hubble and others. These are legitimate non-discriminatory reasons for terminating Franks. Fullen v. City of Columbus, 514 Fed.Appx. 601, 606 (6th Cir.2013) (“We have repeatedly held that insubordination may constitute a legitimate, nondiseriminatory reason for adverse action.” (citations omitted)).
Moreover, Franks has failed to demonstrate that defendants’ stated reasons for his termination were pretextual. In order to show pretext, a plaintiff must establish a genuine issue of material fact that the stated reasons for termination were false. Ohio Univ., 887 N.E.2d at 424. Franks has not done so. To the extent Franks disputes these accounts of *539 insubordination and unprofessionalism, he disputes immaterial aspects — such as whether his tone was “polite” when accusing someone of lying — rather than the material aspects of the incidents. Therefore, Franks has failed to meet his burden to show pretext.
IV.
For these reasons, we affirm the judgment of the district court.