**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0058n.06

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jan 24, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| CARL BOHANNON, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| TOWN OF MONTEREY, TENNESSEE; BILL | ) |
| RANDOLPH, in his individual capacity and in his | ) |
| official capacity as Chief of Police of the Monterey | ) |
| Police Department; DONATHAN DURHAM, in his | ) |
| individual capacity and his official capacity as an | ) |
| employee of the Monterey Police Department; | ) |
| JACOB CROSS, a citizen; AMANDA MATHNEY, a | ) |
| citizen; JASON DAVIDSON, | ) |
| | ) |
| Defendants-Appellees. | ) |
| | ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

BEFORE:     COLE, Chief Judge; BOGGS and SILER, Circuit Judges.

**BOGGS, Circuit Judge.**  This case presents us with a clash of narratives: Carl Bohannon states that he was sitting on the ground after an unprovoked assault and was shot in the back with a Taser by Officer Donathan Durham.  Officer Durham asserts that Bohannon was in a daze, staggering around and presenting a danger to himself and others.  At summary judgment we must take the record in the light most favorable to the nonmoving party and thus Bohannon's account controls.  Because the district court combined the two accounts to make one (certainly plausible) account rather than evaluating the question of qualified immunity based upon Bohannon's account, we must reverse the grant of summary judgment and remand for further proceedings.

I

Shortly after dusk on the evening of September 26, 2013, Carl Bohannon was sitting in his car in the Monterey Dairy Queen parking lot. Having recently finished a round of shooting at the gun range and looking forward to a date, Bohannon grabbed a beer from the eighteen-pack he had purchased minutes before and began drinking. The accounts of the facts begin to diverge here.

According to Bohannon's deposition testimony, he had just completed a phone call when, suddenly, a car sideswiped his vehicle and broke his mirror. The other car stopped and the driver, Amanda Matheney, emerged with two passengers, Jacob Cross and Jason Davidson. As Bohannon stepped out of his car, Davidson "came flying out . . . swinging" without provocation. The two male passengers tackled Bohannon and left him on the ground, and the trio returned to their car and pulled into the drive-through to order food. Bohannon followed them and told them he would not let them leave. Matheney, Cross, and Davidson exited their car, and Davidson began punching Bohannon again, knocking him to the ground. Bleeding, Bohannon grabbed Davidson, who pummeled Bohannon, who was lying on his back. Bohannon did not return the blows and assumed the group was on drugs. Abruptly, Matheney, Cross, and Davidson moved away from Bohannon and sat down on the curb. Bohannon began to sit up, when his leg buckled and he felt as though his heart had given out. Although he did not realize it, he had just been shot in the back with a Taser by an arriving officer, Donathan Durham, without warning. After asking the officer why he had been tased, Bohannon was taken in handcuffs to the hospital, but was later released.

According to Durham's deposition testimony, he found Bohannon lying on his back two feet from the street, "appear[ing] to be knocked out, unconscious." Bohannon stood up and then

stumbled about, falling several times, including once in the roadway. Durham asked Bohannon to sit down, which he did, but then when he attempted to stand again, Durham told Bohannon "if you don't stay down, I'm going to be forced to tase you." As Bohannon rose, Durham shot him in the back with a Taser to prevent him from moving out into the roadway.

Cross said in a sworn statement that he was walking by the Dairy Queen when his friend Davidson pulled into the parking lot and called him over. Bohannon came over to the car and began cursing at Davidson and started to fight with him. Davidson gained the upper hand and pinned Bohannon to the ground, at which point Bohannon yielded. Davidson drove to the drive-through, and Bohannon returned, striking Davidson's car with his fists. Davidson got out of the car and knocked out Bohannon. Davidson was then told by arriving officers to sit down. Bohannon attempted to stand despite officers' commands not to do so, and staggered around until being tased.

Bohannon brought suit in Tennessee state court against Chief of Police Bill Randolph of the Monterey Police Department, Officer Durham, the Town of Monterey, Davidson, Cross, and Matheney for violations of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and assault, battery, and negligent infliction of emotional distress under Tennessee law, and against Chief Randolph for failure to train his officers properly. Defendants removed the case to federal court under the authority of 28 U.S.C. §§ 1331 and 1343. There, Plaintiff voluntarily requested to dismiss his Fifth Amendment and negligent-infliction-of-emotional-distress claims.

After a motion for summary judgment from Durham, which was joined by the Town of Monterey and Randolph, the district court found that Durham was entitled to qualified immunity, and as a result that the claims against the Town of Monterey and Randolph could not be

sustained. Without any further federal claims, the court remanded the remaining state-law claims to the Putnam County Circuit Court.

## II

## A

We review a district court's grant of summary judgment de novo. *Darrah v. City of Oak Park*, 255 F.3d 301, 305 (6th Cir. 2001). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute exists, we assume the truth of the nonmoving party's evidence and draw all inferences in the light most favorable to that party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Should sufficient evidence exist for a trier of fact to find for the nonmoving party, summary judgment is inappropriate. *See id.*

Claims under 42 U.S.C. § 1983 require an alleged deprivation of a federal right by someone acting under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Government officials performing discretionary functions are protected by qualified immunity where "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). An officer violates the Fourth Amendment when he uses objectively unreasonable force in light of the facts and circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The reasonableness of force is determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

B

A threshold matter that has significant impact on the resolution of this case is whose account to use in determining whether Bohannon's rights were violated. The district court rooted its analysis in the story as presented by Durham and Cross, rationalizing its use of those facts by stating that "Plaintiff simply does not recall most of what went on in the parking lot." But in doing so, the court appears to have assumed that all the facts alleged by both parties occurred, and then reasoned that the events alleged by Defendants must have occurred while Bohannon was in shock. Yet Bohannon clearly alleges that no significant time passed between when the trio moved away from him and sat down and when he was struck by the Taser. Given that, at this stage, "this court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party," we must therefore take the facts as provided by Bohannon, at least where not blatantly contradicted by the record. *McLean v. 988011 Ont., Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

Admittedly, some comments from Bohannon's testimony and responses to Defendant's proffered statement of undisputed facts, if taken literally, seem to indicate that Bohannon did not recall the incident. First, he repeatedly stated, "It is denied that at no time during the altercations did Mr. Bohannon feel that he was knocked out." Of course a denial that something never occurred is an admission that it occurred at some point, but the citations provided by Bohannon to these statements belie that conclusion. He cites a medical report and a statement in his deposition where he describes the second altercation and the arrival of the police without gaps in his account. Second, Bohannon frequently stated that he "does not recall any instructions given to him by Officer Durham." But this statement can be understood in two ways: either the events happened and Bohannon cannot recall them because he was unconscious or dazed, or Bohannon

cannot recall them because they did not happen. Because all of these statements are accompanied with denials that the alleged facts occurred, rather than explained as occurrences that Bohannon is unable to admit or deny per Federal Rule of Civil Procedure 36(a)(4), they can be best understood as asserting that Bohannon does not recall the statements because they did not happen. Finally, with regard to his statements that he "was really in shock," and that "it wasn't registering, what was going on," Bohannon immediately made clear that he meant that he did not understand why the three defendants suddenly attacked him or later sat down in unison, not that his memory was fogged. Indeed, he then proceeded to describe what happened next without mention of a gap in time or his account.

Where, as here, statements and facts in the record can be reasonably interpreted in a manner consistent with a nonmoving party's claim, they should be. Accordingly, Durham's testimony was not "uncontradicted," but rather was in direct contradiction with Bohannon's testimony that he was shot after attempting to rise from the ground for the first time after Cross and Davidson had moved away. This case differs from *Wysong v. City of Heath*, 260 F. App'x 848 (6th Cir. 2008), where the plaintiff admitted to not remembering any of the events or the timespan in question and could not testify as to what happened, *id.* at 851. Here, Bohannon's testimony provides his own version of events, which we may use in determining whether Durham's conduct was objectively unreasonable. Where that testimony creates a factual question regarding the violation of constitutional rights, it is enough to defeat summary judgment. *See id.* at 858 ("[A] single difference in the record would lead to a different result[:] . . . [if] Wysong could raise a fact question through his own testimony . . . .").

Using only Bohannon's description of the facts, it is manifest that the force used by Durham was unreasonable. According to this account, Bohannon was sitting up after being

beaten by attackers and then was tased in the back by Durham. "[T]he right to be free from physical force when one is not resisting the police is a clearly established right," and tasing someone in the back without warning while he sits on the ground or attempts to stand, absent any threat to the safety of the individual or others, would violate this clearly established right. *Id.* at 856; *see Bennett v. Krakowski*, 671 F.3d 553, 562 (6th Cir. 2011). It bears repeating that this version of events is disputed by Durham and Cross, but that dispute only confirms that there exists a genuine issue of material fact with regard to whether Bohannon's rights were violated.

III

It is entirely possible that Durham's account of what happened on September 26 is wholly accurate, and Bohannon was in such shock that he did not recall stumbling around after the second altercation. But possibility alone is insufficient to overcome a party's sworn statements to the contrary. Therefore, there is a genuine issue of material fact that may be best resolved before a fact-finder. As a result, we REVERSE the district court's grant of summary judgment as to the excessive-force claim and its remand order and REMAND to the district court for proceedings consistent with our opinion.