NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0254n.06

No. 17-6236

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ROBERT GHIRINGHELLI, COLIN KEITH )
HOLLEY, DERROLD NASH, ANTHONY )
PETITTI, JR., and HARMON G. PYE, III, )
                               )
      Plaintiffs-Appellants, )
                               )
                               )  ON APPEAL FROM THE UNITED
v. )  STATES DISTRICT COURT FOR THE
                               )  MIDDLE DISTRICT OF TENNESSEE
THE ASSURANCE GROUP, INC., )
                               )
      Defendant-Appellee. )

**FILED**
May 23, 2018
DEBORAH S. HUNT, Clerk

BEFORE:    DAUGHTREY, STRANCH, and THAPAR, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Plaintiffs Robert Ghiringhelli, Colin

Keith Holley, Derrold Nash, Anthony Petitti, Jr., and Harmon G. Pye, III,[1] appeal the district

court's grant of summary judgment to defendant The Assurance Group, Inc., on the plaintiffs'

claims for breach of contract, conversion, breach of fiduciary duty, statutory and regulatory

violations, and for declaratory judgment. Before this court, the plaintiffs contend that the district

court, exercising its diversity jurisdiction, erred in applying North Carolina's three-year statute of

limitations to conclude that the claims were time-barred. Specifically, the plaintiffs maintain that

two decisions from the United States Supreme Court, *Petrella v. Metro-Goldwyn-Mayer, Inc.*,

134 S. Ct. 1962 (2014), and *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar*

---

[1] The amended complaint in this matter originally listed 24 plaintiffs; however, the claims of all but five plaintiffs have been settled by other means.

*Corp. of California, Inc.*, 522 U.S. 192 (1997), mandate that we apply a "separate-accrual rule" and conclude that the applicable limitations period for the plaintiffs' claims started anew each time a commission payment was due to the plaintiffs. In the alternative, the plaintiffs assert that they had no valid contracts with The Assurance Group. We find no merit to these assertions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Assurance Group—referred to throughout this litigation by the acronym TAG—"is an insurance-marketing firm that, among other things, contracts with certain insurance carriers to market and sell health and life insurance products underwritten by those carriers." TAG then "sells these insurance products through both its own licensed insurance agents and through independent insurance agents engaged by TAG as independent contractors."

Each of the plaintiffs in this matter admits that he signed an Independent Agent Agreement with TAG. Pursuant to that form agreement, the plaintiffs conceded that they were independent contractors, not employees, of TAG; that the agreement could be terminated "with or without cause, voluntarily or involuntarily, and for any reason or no reason"; that if the agreement were terminated prior to "vesting"—which occurred after either three or five years of selling insurance products pursuant to the agreement—the agent would be entitled to one month's commission, with all subsequent commissions "considered unearned and forfeited to [TAG]"; that "[t]he validity, interpretation, performance and enforcement of [the] Agreement shall be governed by the laws of the state of North Carolina"; and that the agreement could be executed by means of an "electronic signature."

The plaintiffs nevertheless indicated in affidavits that, shortly after beginning their business relationships with TAG, they began to notice discrepancies between the commission

payments they received and what they believed they should have received under the terms of the agent agreements. The plaintiffs thus requested documentation from the company justifying the payments made to them but did not receive a satisfactory response to their inquiries. As a result, the plaintiffs filed this lawsuit in the United States District Court for the Middle District of Tennessee.

In their Amended and Supplemental Complaint, 24 plaintiffs, including the five plaintiffs still active in this litigation, raised claims of conversion, breach of fiduciary duty, breach of contract, and statutory and regulatory violations. They sought both declaratory relief and damages for the nonpayment of commissions to which they felt entitled. Prior to the district court's ruling on motions for summary judgment and for partial summary judgment filed by the respective parties, all but six of the plaintiffs were dismissed from the suit. Subsequently, an additional plaintiff, Eric Tuttobene, settled his claims against TAG, leaving for our review only that portion of the district court's order that granted summary judgment to TAG on the claims brought by plaintiffs Ghiringhelli, Holley, Nash, Petitti, and Pye.

In granting summary judgment to TAG, the district court determined, based both upon an express provision in the agent agreements and upon application of Tennessee's borrowing statute, Tenn. Code Ann. § 28-1-112, that North Carolina's three-year statute of limitations on bringing claims for conversion, breach of contract, breach of fiduciary duty, and for declaratory judgment arising from a contract dispute should be applied in this case. *See* N.C. Gen. Stat. Ann. § 1-52(1), (4). Quoting the opinion of the North Carolina Court of Appeals in *The Assurance Grp, Inc. v. Bare*, 782 S.E.2d 581 (Table), 2016 WL 608098, at *3 (N.C. Ct. App. Feb. 16, 2016), the district court agreed that "once [the plaintiffs] learned that the Assurance Group was not paying them what they believed they were owed under the contract, the limitations period

began to run on these claims." Because the claims arose more than three years before the plaintiffs filed suit against TAG, the plaintiffs' causes of action were time-barred. From that ruling, the plaintiffs now appeal.

## DISCUSSION

In their brief before this court, the plaintiffs concede that, "[e]xcept for Pye and Nash, the contract wording compels application of North Carolina law, which provides for a three-year statute of limitations on basic contract actions." Nevertheless, the plaintiffs contend that they are not bound by the Independent Agent Agreements for various reasons. Among those reasons are the claims that plaintiff Pye's contract did not contain a choice-of-law provision and that the record does not contain a copy of a contract between plaintiff Nash and TAG. The plaintiffs further insist that even if the agreements are valid, and even if the North Carolina three-year statute of limitations on contract and conversion claims applied generally to such causes of action, that statute of limitations would not bar all claims made by the plaintiffs here because some of the claims accrued within the three years prior to the filing of the complaints.

**Standard of Review**

In our *de novo* review of the arguments advanced by the plaintiffs, we employ the same decisional framework as the district court. In short, we will uphold the district court's grant of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party. *See Ciminillo v.*

*Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). The party opposing a motion for summary judgment, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A non-moving party cannot withstand summary judgment by introduction of a "mere scintilla" of evidence in its favor. *Ciminillo*, 434 F.3d at 464 (quoting *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)). Indeed, a party asserting that a fact genuinely can be disputed "must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(a). Although "[t]he court need consider only the cited materials, . . . it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**Validity of the Independent Agent Agreements**

Both before the district court and in their appellate brief, the plaintiffs suggest that, for various reasons, their contracts with TAG were not valid and were void *ab initio*. Consequently, they argue that they are not bound by the language of the agreement that provides that disputes between the parties would be resolved by reference to North Carolina law and that state's three-year statute-of-limitations period. The plaintiffs' claims for damages, however, are predicated upon alleged breaches of *contractual provisions*. If the contracts themselves never existed, the bases for their claims to unpaid commissions allegedly due under those contracts also do not exist. To the extent that the plaintiffs argue that their contract claims are based on oral agreements, they fail to cite any portion of the record to support their assertion. In any event, the plaintiffs admitted that their business relationships with TAG "were formalized and governed by contracts executed by the Plaintiffs." The plaintiffs cannot advance a contrary position at this point in the litigation.

**Alleged Problems with the Contracts of Plaintiffs Nash and Pye**

In arguing that North Carolina's three-year statute of limitations for contract challenges should not apply in this case, the plaintiffs allege that "[t]here is no Derrold Nash document, and the Harmon Pye document is incomplete, with no reference to North Carolina." It is true that the appellate record does not contain a copy of a contract between Nash and TAG. Furthermore, the copy of Pye's contract with TAG that appears in the record does not contain a reference to a provision requiring application of North Carolina law. Even so, those omissions do nothing to bolster the plaintiffs' assertions.

Although the record on appeal does not contain a copy of a contract between Nash and TAG, plaintiffs' counsel admitted in response to TAG's statement of undisputed material facts that "Mr. Nash signed a contract with TAG similar to the other Plaintiff contracts in this case." Because counsel for the plaintiffs also acknowledged that the business relationships "between TAG and the Plaintiffs" were formalized by contracts, the only logical conclusion to be drawn from those concessions is that Nash, too, executed a contract with the defendant containing the same key provisions that all the other contracts in this case contained..

Similarly, counsel's assertion that plaintiff Pye's contract did not specify that North Carolina law would govern the resolution of disputes between the parties entitles Pye to no relief. Although the copy of Pye's contract included in the appellate record does not contain the same choice-of-law provision found in the contracts signed by the other plaintiffs, only pages 1, 3, 5, 7, and 9 of the contract have been reproduced. Even so, we are not left to speculate what contractual language was contained in the missing pages of the agreement between Pye and TAG. As we have noted, counsel for the plaintiffs conceded that *Nash's* agreement was "similar

to the other Plaintiff contracts in this case," presumably even Pye's—contracts that *did* contain explicit language designating North Carolina law as the law to be applied in resolving disputes under the agreements. Indeed, the wording on the pages of Pye's agreement that are included in the record is identical to that in the contracts of the other plaintiffs, leading to the reasonable assumption that the remainder of Pye's contract also was identical to the other contracts. To the extent that it was not, Pye was responsible for offering evidence disputing the claim of TAG in the defendant's motion for summary judgment. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586 (party opposing summary judgment must offer more than "some metaphysical doubt as to the material facts"). Nash and Pye thus are not entitled to the relief they seek on these grounds.

**Application of North Carolina's Three-Year Statute of Limitations**

The plaintiffs focus the majority of their appellate argument on their contention that, even accepting the applicability of North Carolina law, the district court erred in its determination that their claims were time-barred. In North Carolina, actions based "[u]pon a contract, obligation or liability arising out of a contract, express or implied," must be brought within three years of the time the cause of action accrued. N.C. Gen. Stat. § 1-52(1). Similarly, actions for converting or injuring any goods or chattel must be brought within three years of the alleged conversion. N.C. Gen. Stat. Ann. § 1-52(4); *Stratton v. Royal Bank of Can.*, 712 S.E.2d 221, 227 (N.C. Ct. App. 2011). Because the plaintiffs' claims for breach of fiduciary duty and for declaratory judgment also arise from the contracts between TAG and the plaintiffs, all of the plaintiffs' causes of action were required to have been brought within three years from the date on which those claims accrued. "[T]he burden is on plaintiffs to show they instituted their actions within this prescribed period." *Matthieu v. Piedmont Nat. Gas Co.*, 152 S.E.2d 336, 339 (N.C. 1967).

"[I]n order to determine if [the plaintiffs'] lawsuit is barred by the three year statute of limitations, [we] must first determine when the breach occurred which caused the cause of action to accrue." *Pearce v. N.C. State Highway Patrol Voluntary Pledge Comm.*, 312 S.E.2d 421, 424 (N.C. 1984). For more than a century, North Carolina courts have hewed to a consistent determination of when a cause of action accrues. In *Pearce*, the North Carolina Supreme Court, citing *Matthieu*, which in turn quoted *Mast v. Sapp*, 53 S.E. 350, 351 (N.C. 1906), reiterated:

> Where there is a breach of an agreement or the invasion of an agreement or the invasion of a right, the law infers some damage . . . . The losses thereafter resulting from the injury, at least where they flow from it proximately and in continuous sequence, are considered in aggravation of damages . . . . The accrual of the cause of action must therefore be reckoned from the time when the first injury was sustained. . . . When the right of the party is once violated, even in ever so small a degree, the injury, in the technical acceptation of that term, at once springs into existence and the cause of action is complete.

*Pearce*, 312 S.E.2d at 424 (alterations in original).

The plaintiffs do not dispute that they first were made aware of inconsistencies or improprieties in the calculation of their commissions more than three years before they filed suit. They contend, however, that after their departure from the company, TAG continued to receive "sizable and significant monthly payments from the various insurance carriers for whom [they] had written policies during [their] association with TAG," but for which they were never compensated. From this circumstance, they argue that each month the company failed to account for these missing commissions, a new cause of action accrued, bringing the case within the statute of limitations.

Although the plaintiffs do not cite any North Carolina authority in support of their contention, at least two such decisions of the North Carolina Court of Appeals lend some credence to an argument that "the continuing wrong doctrine [is] an exception to the general rule

that a claim accrues when the right to maintain a suit arises." *Babb v. Graham*, 660 S.E.2d 626, 637 (N.C. Ct. App. 2008). "For the continuing wrong doctrine to apply, the plaintiff must show [a] continuing violation by the defendant that is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Marzec v. Nye*, 690 S.E.2d 537, 542 (N.C. Ct. App. 2010) (alterations in the original) (citations and internal quotation marks omitted). In *Babb*, for example, the state intermediate court applied the continuing-wrong doctrine to save claims for breach of fiduciary duty in a case in which a trustee continuously refused to make required distributions under the terms of a trust agreement. *Babb*, 660 S.E.2d at 637. Similarly, in *Marzec*, the same court found the continuing-wrong doctrine applicable, ruling that "a cause of action for breach of fiduciary duty for failure to pay Marzec's salary accrued each time Nye failed to pay Marzec his monthly salary." *Marzec*, 690 S.E.2d at 542.

Rather than rely on state law, however, the plaintiffs strategically argue that two cases from the United States Supreme Court—*Petrella* and *Bay Area Laundry*—mandate application of a separate-accrual rule that would render many of the plaintiffs' claims timely. In *Petrella*, the Court sought "to resolve a conflict among the Circuits on the application of the equitable defense of laches to copyright infringement claims *brought within the three-year look-back period prescribed by Congress*." *Petrella*, 134 S. Ct. at 1972 (emphasis added). Thus, in *Petrella*, the Court dealt with a situation unlike the one in the present case—in fact, with a scenario in which all claims brought by the plaintiff were brought *within* the applicable limitations period. Nevertheless, the Court did include in its decision the following language that the plaintiffs here find helpful, by analogy, to their case:

> It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an

infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs.

*Id.* at 1969 (alteration in original) (footnotes omitted).

In *Bay Area Laundry*, the Court resolved a dispute over when a cause of action ripens under the Multiemployer Pension Plan Amendments Act (MPPAA) to the Employee Retirement Income Security Act (ERISA). *Bay Area Laundry*, 522 U.S. at 195. Because the MPPAA imposed upon employers an obligation to make *installment payments* to pension funds, the Court concluded that "each missed payment creates a separate cause of action with its own . . . limitations period." *Id.*

According to the plaintiffs, the principles espoused in *Petrella* and *Bay Area Laundry* require us to conclude that all of their claims are timely under North Carolina's three-year statute of limitations on contract and conversion actions, because those cases stand for the proposition that each time TAG failed to account for or pay a commission to the plaintiffs, a new three-year limitations period began. The plaintiffs' position holds some appeal, regardless of whether the causes of action listed in the complaint are based upon federal statutes or state law. Nevertheless, even if the plaintiffs' complaints were filed within three years of any later non-payment of commissions due them, the district court properly concluded that the claims were time-barred. That is because the district court, sitting in diversity, was bound to apply North Carolina law as interpreted by the courts of that state, and because the North Carolina Court of Appeals has decided the question now before us in an unambiguous, definitive manner.

In *Bare*, one of the original plaintiffs in the lawsuit now before this court brought a counterclaim in a North Carolina state court action against TAG, alleging, as the plaintiffs in this

matter do, that TAG "failed to properly account for funds received from the sale of . . . insurance products and to pay . . . the commissions and other funds owed under the parties' contracts." 2016 WL 608098, at *1. In response to TAG's assertion that Bare's claims were barred by the applicable three-year statute of limitations, Bare cited *Petrella* and argued that "each commission payment under the contract is a new violation with a separate statute of limitations period, like the separate-accrual rule applied to federal copyright claims." *Id.* The North Carolina Court of Appeals disagreed, finding that Bare's claims were untimely. As the court explained:

> The heart of this dispute is a disagreement about what the Assurance Group owes [Bare] under the terms of [his] contract[ ]. Although the contract may require the Assurance Group to periodically make payments to [Bare], the underlying contract dispute remains the same. Thus, once [Bare] learned that the Assurance Group was not paying [him] what [he] believed [he was] owed under the contract, the limitations period began to run on [his] claim.

*Id.* at *3.[2]

Sitting in diversity, our task is to predict how North Carolina's highest court would decide this question. In *Bare*, the North Carolina Court of Appeals decided the same issue on identical facts. As such, it is the best guidance on this question. Consequently, as in *Bare*, the defendants here were required to file suit within three years of the date on which they first learned "that the Assurance Group was not paying them what they believed they were owed under the contract."

Plaintiff Ghiringhelli began his contractual relationship with TAG in 2003, first noticed discrepancies in the receipt of payments "[n]ear the beginning of [that] business relationship," and ended his employment with the defendant in 2008. However, because he did not file suit

---

[2] The North Carolina Supreme Court denied review in *The Assurance Grp v. Bare*, 793 S.E.2d 225 (N.C. 2016), and the United States Supreme Court denied Bare's petition for a writ of certiorari. *Bare v. The Assurance Grp, Inc.*, 137 S. Ct. 837 (2017).

until 2012, more than three years after first becoming aware that he had not received the commissions to which he felt entitled, his claims are time-barred.

Plaintiff Holley first noted discrepancies in the payments he received from the defendant in 2007. Because he also did not file suit against TAG until January 2012, his claims are time-barred.

Plaintiff Nash ended his business relationship with the defendant on September 12, 2006, but did not file suit against TAG until October 2010. As a result, his claims are time-barred.

Plaintiff Petitti admitted that he first "began to observe discrepancies on receiving payments from TAG at the end of 2006." Because Petitti nevertheless did not file suit against the defendant until October 2010, his claims are time-barred.

Finally, plaintiff Pye conceded that his problems with TAG first manifested themselves in the fall of 2005. Although Pye ended his employment with the defendant in April 2006, he did not file suit against TAG until January 2012. His claims thus also are barred by application of North Carolina's three-year statute-of-limitations period.

**CONCLUSION**

On appeal, the plaintiffs have offered two rationales in support of their contention that their claims against TAG were not barred by North Carolina's three-year statute of limitations on causes of action based on conversion or arising from a contract. First, recognizing that the contracts between the plaintiffs and the defendant explicitly called for the application of North Carolina law, the plaintiffs offered various challenges to the validity of those contracts themselves, implying that if the contracts were void *ab initio*, the choice-of-law provision in

them cannot stand. The plaintiffs' challenges to the validity of the contracts are without merit, however.

Second, the plaintiffs argue that even if the North Carolina three-year statute-of-limitations period does apply in this case, the separate-accrual doctrine employed in Supreme Court cases involving copyright claims and claims under ERISA should be invoked to save the plaintiffs' causes of action. Despite any appeal such a position might have, the courts of North Carolina are the final arbiters of North Carolina tort and contract law. Consequently, we are bound to follow the decision in *Bare* and hold that the claims of the plaintiffs here also are barred by North Carolina's three-year statute-of-limitations period.

We thus AFFIRM the judgment of the district court.